**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JEANETTE A. CARR, Individually And On Behalf Of All Others Similarly Situated, <br><br>        Plaintiff, <br><br>      v. <br><br> ANALOGIC CORPORATION, FRED B. PARKS, BERNARD C. BAILEY, JEFFREY P. BLACK, JAMES J. JUDGE, MICHAEL T. MODIC, STEPHEN A. ODLAND, and JOSEPH E. WHITTERS, <br><br>        Individual Defendants. | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Jeanette A. Carr ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including the investigation of counsel and a review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings the action individually and on behalf of similarly situated holders of the common stock of Analogic Corporation ("Analogic" or the "Company"), except Defendants (defined below) and their affiliates, against Analogic and the directors and certain officers of the Company (collectively, the "Individual Defendants" or "Board") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition by which Altaris Capital Partners, LLC ("Altaris"), through its wholly-owned affiliates ANLG

Holding Company, Inc. ("ANLG Holding") and ANLG Holding's wholly-owned subsidiary AC Merger Sub, Inc. ("Merger Sub"), will acquire all of the outstanding stock of Analogic for a derisory price (the "Proposed Transaction").

2.    On April 10, 2018, Analogic and Altaris jointly issued a press release announcing that they had entered into a definitive Agreement and Plan of Merger ("Merger Agreement") pursuant to which Altaris will acquire Analogic in a transaction valued at approximately $1.1 billion to shareholders.

3.    On April 10, 2018, Analogic filed a Form 8-K with the Securities and Exchange Commission ("SEC") wherein it disclosed the terms of the Merger Agreement.  Pursuant to the Merger Agreement, Merger Sub will merge with and into Analogic, with Analogic surviving the merger as a wholly owned subsidiary of ANLG Holding.

4.    According to Analogic's Form 8-K, at the effective time of the merger, each share of Analogic common stock will be converted into the right to receive $84 in cash per share (the "Merger Consideration").  This represents a 12.5% discount to the $96.05 closing price of Analogic shares right before the Proposed Transaction was announced.  The special meeting of shareholders to vote on the Proposed Transaction is scheduled for June 21, 2018.

5.    On May 2, 2018 Analogic filed a Preliminary Proxy Statement on Schedule 14A with the SEC in connection with the Proposed Transaction.  On May 16, 2018 Analogic filed a Definitive Proxy Statement on Schedule 14A with the SEC.  On June 12, 2018, Analogic filed a Current Report on Form 8-K purporting to amend the Definitive Proxy Statement as part of a settlement of certain litigation involving the Proposed Transaction.  The Definitive Proxy Statement as amended by the Form 8-K is referred to herein as the "Proxy Statement".  As described herein, the Proxy Statement misstates and/or omits certain material information with

respect to the Proposed Transaction, which renders it false and misleading, in violation of Sections 14(a) and 20(a) of the Exchange Act.

6.     In pursuing the unfair plan to facilitate the acquisition of Analogic by Altaris for grossly inadequate consideration, the Proxy Statement exposes some details of the highly flawed sales process, but the Proxy Statement fails to disclose a myriad of material facts concerning the Proposed Transaction, preventing shareholders from casting an informed vote for or against the Proposed Transaction.  The Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process for the Company; and (b) certain financial forecasts prepared by Analogic and relied upon by Citi.

7.     For these reasons and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9. Plaintiff seeks to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C §78aa, and 28 U.S.C. §1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that is incorporated in this District, or is an individual who is a director of a corporation incorporated District and otherwise has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this District permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper under 28 U.S.C. §1391 in this Court because Analogic is incorporated in this District, some of the transactions and wrongs complained of herein, including

the Defendants' breaches of their fiduciary duties owed to Analogic shareholders, occurred in this District, and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES & RELEVANT NON-PARTIES

11.  Plaintiff is, and has been at all times relevant hereto, a shareholder of Analogic.

12.  Defendant Analogic is a Massachusetts corporation headquartered at 8 Centennial Drive, Peabody, Massachusetts, 01960.  Analogic is a healthcare and security technology solutions company.  Its products and services include advanced imaging and real-time guidance technologies used for disease diagnosis and treatment as well as for automated threat detection. Analogic's flagship BK Ultrasound brand, used in procedure-driven markets such as urology, surgery, and point-of-care, is sold to clinical practitioners around the world. Analogic's advanced imaging technologies are also used in computed tomography (CT), magnetic resonance imaging (MRI), and digital mammography systems, as well as automated threat detection systems for aviation security.

13.  Individual Defendant Fred B. Parks ("Parks") is President and Chief Executive Officer of the Company and has been a director of the Company since April 2007.

14.  Individual Defendant Bernard C. Bailey ("Bailey") has been a director of the Company since 2010 and is Chairman of the Board.

15.  Individual Defendant Jeffrey P. Black ("Black") has been a director of the Company since 2010.

16.  Individual Defendant James J. Judge ("Judge") has been a director of the Company since 2005.

4

17.    Individual Defendant Michael T. Modic ("Modic") has been a director of the Company since 2001.

18.    Individual Defendant Stephen A. Odland ("Odland") has been a director of the Company since 2016.

19.    Individual Defendant Joseph E. Whitters ("Whitters") has been a director of the Company since 2017.  As noted by Analogic in an October 13, 2017 press release, Whitters' appointment "resulted from ongoing and constructive conversations members of the Board and management had with Voce Capital Management LLC ("Voce"), an Analogic stockholder, regarding the company's strategic plans and the Board's composition. As part of a Cooperation Agreement that Analogic entered into with Voce in connection with Mr. Whitters' appointment as an independent director, Voce has agreed to support the Analogic Board's nominees at the company's 2018 Annual Meeting of Stockholders, which is scheduled to be held on December 1, 2017."

20.    Defendants Parks, Bailey, Black, Judge, Modic, Odland and Whitters are collectively referred to as the "Individual Defendants" or the "Board". The Individual Defendants and Analogic are referred to herein as "Defendants."

21.    Non-party Altaris is a private equity fund founded in 2003 and is focused on the global healthcare industry. Altaris manages $2.4 billion of equity capital and has made 34 platform investments. Altaris is headquartered in New York City.

22.    Non-parties ANLG Holding, a Delaware corporation, and Merger Sub, a Massachusetts corporation and a wholly-owned subsidiary of ANLG Holding, are owned and/or otherwise controlled by Altaris and have been formed for the purpose of facilitating the consummation of the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23, on behalf of all holders of Analogic common stock who are being and will be harmed by the Defendants' actions described below (the "Class"). Excluded from the Class are the Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

24.     This action is properly maintainable as a class action because:

(a)     The Class is so numerous that joinder of all members is impracticable. According to Analogic's most recent quarterly report on Form 10-Q, as of May 30, 2018, there were approximately 12,501,638 shares of Analogic common stock outstanding. The actual number of public shareholders of Analogic will be ascertained through discovery;

(b)     There are questions of law and fact which are common to the Class, including *inter alia,* the following:

i.      Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

ii.     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.    Whether shareholders suffered damages as a result of being compelled to vote for the Proposed Transaction based on the materially false, incomplete, and misleading Proxy Statement.

(c)     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

(d)     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A.    Background

25.    Analogic's products and services include advanced imaging and real-time guidance technologies used for disease diagnosis and treatment as well as for automated threat detection. Analogic's flagship BK Ultrasound brand, used in procedure-driven markets such as urology, surgery, and point-of-care, is sold to clinical practitioners around the world. Analogic's advanced imaging technologies are also used in CT, MRI, and digital mammography systems, as well as automated threat detection systems for aviation security.

26.    On June 6, 2017, Analogic issued a press release announcing its financial results for the third quarter ended April 30, 2017, which were "in-line with expectations."  Analogic expected its results to improve and that its "performance will eventually benefit from the restructuring actions announced last quarter" and that its "efforts in Ultrasound to optimize the product portfolio and reduce operating expenses are on track to be completed by fiscal year-end."

27.    More specifically, in its June 6, 2017 press release, Analogic discussed a refocusing of its troubled Ultrasound business and its veterinary business:

"During the quarter, Analogic incurred a significant asset impairment charge associated with the write-off of goodwill and intangibles in our Ultrasound business resulting from our revised revenue expectations for the general imaging product

being offered by our technology partner and revenues from our Oncura veterinary business. Additional delays due to software development and new applications resulted in a reassessment of our long-term expectations for our general imaging product. Also, we have decided to discontinue further investment in our handheld Sonic Window platform. Our Ultrasound business is returning to our core of urology and surgical guidance with upside opportunities in point-of-care and eventually general imaging."

28.    As a result, Analogic disclosed that it was exploring "strategic alternatives" with respect to its Sonic Window platform and its Oncura veterinary business.  Nothing in the press release suggested or hinted at a sale of Analogic as an entity.  The press release stated, in part:

> The Ultrasound business assessment completed last quarter will result in a more focused product portfolio with lower operating expenses. We have revised our guidance for fiscal 2017 due partially to lower expected revenues from ultrasound as we work through our restructuring and product optimization efforts. Specifically, our Oncura Veterinary business is expected to have lower revenues in our fiscal fourth quarter. We are currently looking at strategic alternatives for the Oncura Veterinary and Sonic Window businesses.

29.    The stock market did not view Analogic's June 6, 2017 press release as an announcement of a sale of Analogic.  On June 6, 2017, the last trading day prior to this announcement, Analogic's stock price closed at $74.60.  Disappointed with the poor third quarter results and far from interpreting the announcement as a precursor to a sale of Analogic, the stock market dropped Analogic's shares 9.6% to close at $67.45 on June 7, 2017, the day after the announcement.

30.    Finally, on September 19, 2017, as part of its release of its financial results for the fourth quarter ended July 31, 2017, Analogic announced that it had "engaged Citi as financial advisor and initiated a process for the sale of the ***entire*** Company to maximize stockholder value on an accelerated timeline." (Emphasis added.)  Not surprisingly, the share price of Analogic stock increased from a close of $75.95 on September 19, 2017 to a close of $77.60 on September 20, 2017 before continuing on an upward trajectory for the rest of 2017 and 2018.

31.    Most significantly, on March 5, 2018, Analogic announced stellar financial results for the second quarter ended January 31, 2018 and the market responded with great enthusiasm driving up Analogic's share price from $84.95 on March 5, 2018 to $94.00 on March 6, 2018. Incredibly, Analogic no doubt fearful of disclosing the true extent of its financial and operational success. refused to provide any guidance to shareholders, stating instead, "We continue to pursue our previously announced strategic sale process. In view of the status of that process, we are not commenting on our fiscal year guidance or other forward-looking performance measures."

32.    Therefore, the Proposed Transaction comes at a time when Analogic's recent and future success may not have been even fully reflected by its share price. The Proposed Transaction inappropriately caps the growth Analogic shareholders would have seen in their investment.

33.    Despite Analogic's improving financial results and the possibility of a further turnaround, Defendants have agreed to sell the Company now and deprive its shareholders of the ability to partake in the Company's future growth.  Defendants breached their fiduciary duties owed to the Company's remaining shareholders by agreeing to the Proposed Transaction for the unfair Merger Consideration.

**B.    The Proposed Transaction**

34.    On April 10, 2018, Analogic and Altaris jointly announced the Proposed Transaction in a press release stating:

> **PEABODY, Mass. and NEW YORK – April  10, 2018 –** Analogic Corporation (NASDAQ: ALOG) ("the Company" or "Analogic"), a provider of leading-edge healthcare and security solutions, and Altaris Capital Partners, LLC, a leading private investment firm with expertise in Analogic's end markets, today announced that the Company and an affiliate of Altaris Capital Partners (together with certain affiliated entities, "Altaris") have entered into a merger agreement under which Analogic will be acquired by Altaris for $84.00 per share in cash, or approximately $1.1 billion on a fully diluted basis. The transaction and the merger agreement were unanimously approved by Analogic's Board of Directors, and the Board

unanimously recommends that Analogic's stockholders vote in favor of the transaction.

"The Board has always sought to maximize stockholder value," said Bernard Bailey, chairman of the Analogic Board of Directors. "Given the increasingly competitive markets that we serve, we have been focused on the need to achieve greater scale in order to generate sustained profitable growth. As a result, the Board initiated a review of strategic alternatives available to Analogic. This 10-month, comprehensive process resulted in today's transaction with Altaris that provides stockholders with immediate, substantial, and certain cash value. The Board strongly believes that a transaction with a buyer with strategic assets like Altaris provides maximum value for and is in the best interest of Analogic stockholders."

**Comprehensive, Public Strategic Review Process**
The transaction follows a comprehensive strategic review process that was publicly announced by the Company on June 6, 2017. In September, the Company announced that it had engaged Citi as its financial advisor and had initiated a sale process. In October, the Company's Board of Directors formed a Strategic Alternatives Committee of three independent directors to lead the process. The process involved direct outreach to potential financial and strategic buyers as well as responses to inbound expressions of interest. The Company was ultimately in contact with 75 parties, both domestically and internationally.

Bailey added, "Analogic's three business units present a range of business models and investment needs, each of which is subject to its own market conditions. In light of these factors, the Board considered the long-term positioning of Analogic in each of its markets. Analogic's growth outlook requires continued strategic investment into new channels to market, which involves risk, especially given the pace of change in its served markets."

The Strategic Alternatives Committee and Board considered a comprehensive range of alternatives, including the sale of the entire company, separating the Company's three business units, and the continued short- and long-term operation of the Company on a stand-alone basis. The process culminated with the Board's determination that the Altaris transaction presents the best combination of certainty and value for stockholders.

The transaction represents a 25% premium to the Company's closing share price of $67.45 on June 7, 2017, the day after the Company reported quarterly earnings for the third quarter of fiscal 2017 and announced the launch of the strategic review process. On June 6, 2017, the last trading day prior to this announcement, Analogic's stock price closed at $74.60.

**Strategic Combination**
Over the last 15 years, Altaris has made 34 investments and has deep experience in the manufacturing and marketing of medical devices, imaging technologies and

diagnostic equipment. Analogic will represent Altaris' 17 th company to design and manufacture high-value, FDA-regulated medical products.

"Altaris has a broad portfolio of businesses with strong technology and domain expertise in Analogic's end markets," said Fred Parks, president and chief executive officer of Analogic. "Altaris is well positioned to enhance Analogic's ability to deliver innovative product technology and service offerings to our customers."

"Analogic has a rich history of developing advanced technologies that have enabled innovation in medical imaging and security screening," said George Aitken-Davies, co-founder and managing director of Altaris. "We look forward to building on this heritage and continuing to provide technology-driven imaging solutions and world-class service to the industry."

**Transaction Details**
The transaction is expected to close in mid-2018 and is subject to approval by Analogic stockholders, regulatory approval and other customary closing conditions. Upon the completion of the transaction, Analogic will become a privately held company and shares of Analogic's common stock will no longer be listed on any public market.

Citigroup Global Markets Inc. is serving as financial advisor to Analogic, and Wilmer Cutler Pickering Hale and Dorr LLP is serving as legal counsel to Analogic. Schiff Hardin LLP is serving as legal counsel to Altaris.

35.    On April 10, 2018, Analogic's share price closed at $96.05. The next morning, following the announcement of the Proposed Transaction, the share price collapsed *more than 13%* opening at $83.15.

36.    Rather than continuing to build upon Analogic's improving prospects, the Merger Consideration being offered to Analogic's public shareholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Analogic common stock is materially in excess of the amount offered given the Company's recent financial performance and its prospects for future growth and earnings.

**C.    The Proxy Statement Misstates and Omits Material Information**

37.    On May 16, 2018 Analogic filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  On June 12, 2018, Analogic filed a Current Report on Form 8-K

purporting to amend the Definitive Proxy Statement as part of a settlement of certain litigation involving the Proposed Transaction. The Proxy Statement solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material omissions or misrepresentations. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

      **(i)**      **The Proxy Statement Contains Material False Statements and Omission Regarding the Process by Which the Board Agreed to Sell the Company**

      38.      Page 32 of the Proxy Statement states that "in connection with the Company's third quarter earnings announcement [June 6, 2017], the Company announced that the Board had directed that *all strategic options* be considered to accelerate the pace of value creation for the Company's shareholders" when, in fact, nothing in the June 6, 2017 press release suggested or hinted at a sale of Analogic as an entity. The June 6, 2017 press release merely stated that "We are currently looking at strategic alternatives *for the Oncura Veterinary and Sonic Window businesses*." [Emphasis added.] This intentional misrepresentation is material and needs to be corrected because the April 10, 2018 press release announcing the Proposed Transaction states: "The transaction represents a *25% premium* to the Company's closing share price of $67.45 on June 7, 2017, the day after the Company reported quarterly earnings for the third quarter of fiscal 2017 and *announced the launch of the strategic review process*". [Emphasis added.] This statement misleads shareholders into thinking that they will be receiving a substantial premium for their stock, notwithstanding that Merger Consideration is a *12% discount to* the $96.05 closing price of Analogic shares right before the Proposed Transaction was announced. As noted above,

the stock market did not view Analogic's June 6, 2017 press release as an announcement of a sale of Analogic.  In fact, the stock price *dropped* 9.5% on June 7, 2017 following the disappointing third quarter release.

39.     Page 35 of the Proxy Statement states that on October 17, 2017 the Board formed the "Strategic Alternatives Committee" consisting of Defendants Black, Bailey and Whitters. The Proxy Statement fails to disclose details of the formation of the Strategic Alternatives Committee such as the qualifications of the Board Members selected, the reasons that the Board Members were selected, how the Board of Directors formed the committee, and the extent to which the appointment of Whitters to the Strategic Alternatives Committee was part of the Cooperation Agreement Analogic entered into with Voce on October 17, 2017.  This information is material to shareholders voting on the Proposed Transaction because it is important in assessing whether the Board took reasonable steps to (i) form a committee to evaluate offers for strategic proposal, (ii) ensure that the committee was qualified to evaluate offers for strategic proposals, (iii) ensure that the Proposed Transaction was not affected by any conflict of interest amongst members of the committee.

40.     Page 39 of the Proxy Statement states that "on January 31, 2018, Party A submitted to the Company a non-binding proposal to acquire the Company for a price of $80.00 to $82.50 per share, comprised of approximately 60% cash and 40% Party A stock" without disclosing why Party A had reduced its proposal from $85.00 to $88.00 per share proposed on November 15, 2017. This information is material to shareholders voting on the Proposed Transaction because shareholders do not know whether Party A's reduced proposal resulted from operational or financial issues stemming from Party A's due diligence of Analogic or whether the reduction was due to revised financial projections Analogic provided to Party A, as discussed below.

41.     Page 45 of the Proxy Statement states that on April 5, 2018, "the Committee discussed whether the decision to proceed with a sale transaction should be delayed in light of the trading price of the Company's common stock, but concluded that such a delay would entail a significant risk of losing the transaction currently under consideration with Altaris, and that the extensive sale process conducted by the Company supported the conclusion that this was the best transaction reasonably available. In addition, the Committee discussed the fact that the Company's stock price already reflected expectations regarding the consummation of a transaction, and that postponing the current transaction would likely lead to a significant decline in the stock price" without disclosing the rationales why Altaris $84 per share offer was preferable to remaining a standalone company and what percentage of the Company's stock price "already reflected expectations regarding the consummation of a transaction" given the Merger Consideration was more than 10% below Analogic's stock price.  This information is material to shareholders voting on the Proposed Transaction because the Merger Consideration was ultimately more than 12.5% below Analogic's stock price and Analogic has not explained why that makes business or financial sense.

**(ii)     The Proxy Statement Misleads Shareholders Regarding the Revisions to the Financial Forecasts and the Fairness of the Proposed Transaction**

42.     Analogic's original financial forecast, the Operating Plan, was a set of three-year projections for the Company approved by the Board in September 2017. As the sales process continued, the Company updated its financial forecasts on January 15, 2018, by revising their projections upwards to encapsulate the Company's recent financial success.  This revised and upwards revision of the Company's projections was referred to as the "Revised Operating Plan".  The Company then uploaded the Revised Operating Plan to the virtual data room to communicate these revisions to the potential bidders. Although not expressly stated, it must be assumed that the

Revised Operating Plan was Analogic management's best view of the Company's future performance in light of its recent financial success. However, shortly after the Revised Operating Plan was presented to the bidders, the Company's management engaged in discussions with the bidders to revise the fresh Revised Operating Plan back downwards. It is critical to shareholders to know whether the inspiration for these revisions came from the outside bidders for the Company and not the Company's management. Outside bidders do not possess the same unique insight into the Company's future that management does and have an axiomatic conflict with Analogic shareholders—they want the Company for the lowest price possible, while shareholders want to sell the company for the highest price possible. Thus, the downward revision to the financial forecasts, as reflected in the Revised CT Projections, was quite likely at the behest of the conflicted bidders and not from the Company's management.

43.    On February 8, 2018, in the face of continued financial success, Analogic's Board and management agreed that the 2018 financial forecasts needed to be updated, so they again revised projections upward creating the Updated Fiscal 2018 Forecast. At some unknown time after this, Company management combined the Revised Operating Plan with the Updated Fiscal 2018 Forecast and extrapolated projections for years 2021 and 2022, creating Case 1. Then, as discussed above, to reflect the bidders biased views of the Company, they adjusted Case 1 downwards with the Revised CT Projections and created Case 2A.

44.    On February 28, 2018, Citi presented their preliminary financial analysis of a potential sale of the Company with both upwards and downwards sets of projections, calling the upward projections "Case 1" and the downward projection "Case 2A". It was only at this time—after receiving the results of Citi's preliminary analysis—that the Board decided there was a need to further adjust the projections downward. The Company agreed—at the same meeting the

analysis was presented—that Citi would be asked to perform a new analysis as soon as Analogic management revised the projections far enough downwards.

45.    Moreover, the timing of the decision to revise the Company's projections downwards further strains credibility given the proximity of the revisions to the announcement of the Company's Second Quarter 2018 financial results. As noted above, after the market closed on March 5, 2018, the Company announced spectacular financial results for its 2018 Second Quarter, outpacing revenue by $16.7 million and beating earnings on a per share basis by $0.58. Overnight, Analogic's trading price soared over 10.5%—closing March 5 trading at $84.95 and opening March 6 trading at $94.00.

46.    The Proxy Statement claims that that downward revisions were caused by problems with the CT sub-segment of medical imaging. Originally Analogic made adjustments because "several bidders expressed significant concerns about the viability of our proposed channel development initiative in CT." Proxy Statement at 58. Later in the Proxy Statement the Company states that "the proposed channel development initiative in CT was a new business opportunity for the Company with significant execution risk that was not reflected in Case 1." Proxy Statement at 59.

47.    However, these results (lower CT earnings) were already disclosed by the Company as early as June 2017, and thus did not warrant downward revision in the projections provided by the Company to Citi. Moreover, in their Second Quarter Earnings Call, on March 5, 2018, Senior Vice President, CFO, and Treasurer Michael Bourque stated: "Our medical imaging revenues totaled $63 million down 12% compared to the second quarter of 2017 *but better than expected*. The primary driver of the decrease relates to the sourcing decisions by CT OEM customers *which was expected*." [Emphasis added.]

48.     Curiously, once Company management and the Board began making downward revisions to the Financial Forecasts, the Company stopped making public statements concerning the Company's financial future. In that same Second Quarter Earnings Call, Individual Defendant Parks stated: "As the strategic alternative process matures, we have elected to not provide guidance for the balance of fiscal 2018, neither will be taking questions at the conclusion of our remarks. Realizing this is *not standard course*, we will not take your patience for granted."  [Emphasis added.]

49.     On April 10, 2018, Citi delivered its final fairness opinion to the Board using only the downwardly revised projections for its financial analyses. The Board then voted to unanimously approve the Proposed Transaction and the $84.00 Merger Consideration. At the time of approval, the Merger Consideration represented a 12.5% *discount* to the Analogic's trading price. Not only did the Merger Consideration instantly cause shareholders to lose over $12 a share, it prohibited Analogic shareholders from participating in any future earnings of the Company. Predictably, on June 4, 2018, the Company announced continued positive financial results for the Third Quarter of 2018, outpacing revenue by $4.22 million and beating earnings on a per share basis by $0.11. However, given the hard cap of the $84 Merger Consideration, Analogic's trading price remained constant at just under $84 per share.

50.     On May 16, 2018, as amended on June 12, 2018, Analogic filed and disseminated the materially misleading Proxy Statement with the SEC. The Proxy Statement misleads shareholders regarding the revisions to the Financial Forecasts and the fairness of the Proposed Transaction**.** The Proxy Statement falsely and/or misleadingly states that the Proposed Transaction is in the best interests of the Company and its shareholders and that the Proposed Transaction is fair from a financial point of view to its shareholders. On page 48 the Proxy Statement states that

"the consideration of $84.00 per share represented the best combination of value and certainty for the Company's shareholders" based on the tainted fairness opinion Citi. Such statements are certainly material to Analogic shareholders. Information regarding a Company's financial condition and prospects is material to investment decisions, such as voting on the Proposed Transaction.

51.    Further, Citi's fairness opinion is, by itself, materially misleading to Analogic shareholders, since it was based on downwardly revised projections that did not accurately reflect the value of the Company. The fairness opinion primarily relied on the Case 2B projections, with the exception of the Discounted Cash Flow Analysis, which used both the Case 2A and Case 2B projections. No analysis was performed—or if it was performed, it was omitted from the Proxy Statement—using the Case 1 projections. As discussed above, both sets of Case 2 projections were inappropriately revised downwards, and therefore did not reflect an accurate review of the Company's financial forecast. Thus, a fairness opinion determining the fairness of the Proposed Transaction based on such faulty and manipulated projections is inherently misleading.

52.    Finally, on page 59 the Proxy Statement states: "After reviewing Case 2B and discussing it with management, the Board advised Citi that, in its view, Case 2B represented the most likely standalone financial forecast for the Company's business." This is another materially false and/or misleading statement, since Case 2B does not truly reflects management's most likely view of the standalone financial forecast for the Company's business. Case 2A reflects the revisions requested by bidders not by Company management. Case 2B is a downward revision of Case 2A that was created only after Citi's preliminary financial analysis, and serves to justify the $84 Merger Consideration as "fair" to Analogic shareholders. Neither case presents the most

accurate view of the Analogic's intrinsic value, rendering the above statement false and misleading.

53.    There is no more material information to shareholders in a merger than the information underlying or supporting the purported "fair value" of their shares. Without a financial analysis based on accurate financial projections, Analogic shareholders are not able to determine whether the Proposed Transaction is truly fair. Accordingly, the information included in the Proxy Statement materially misleads shareholders in violation of Sections 14(a) and 20(a) of the Exchange Act.

## FIRST CAUSE OF ACTION
**On Behalf of Plaintiff and the Class Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

54.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

56.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that solicitation communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a 9(a).

57.    Rule 14a-9 further provides that, "[t]he fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed

a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made." 17 C.F.R. § 240.14a-9(b).

58.    As discussed herein, the Proxy Statement misrepresents and/or omits material facts concerning the Merger.

59.    Defendants prepared, reviewed, filed and disseminated the false and misleading Proxy Statement to Analogic shareholders. In doing so, Defendants at least negligently disregarded that the Proxy Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60.    The omissions and incomplete and misleading statements in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote their shares. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

61.    By virtue of their positions within the Company and/or roles in the process and in the preparation of the Proxy Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Merger negotiation and sales process and reviewing Citi's complete financial analyses purportedly summarized in the Proxy Statement.

62.    The Individual Defendants reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Merger.

63.    Analogic is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy Statement.

64.     Defendants knew that Plaintiff and the other members of the Class would rely upon the Proxy Statement in determining whether to vote in favor of the Merger.

65.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(a) of the Exchange Act and Rule 14d-9, Plaintiff and the other members of the Class will suffer damages and actual economic losses (*i.e.* the difference between the value they received as a result of the Proposed Transaction and the true value of their shares prior to the Proposed Transaction) in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of**
**Section 20(a) of the Exchange Act**

66.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

67.     The Individual Defendants acted as controlling persons of Analogic within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Analogic, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

68.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Merger. They were thus directly connected with and involved in the making of the Proxy Statement.

70.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

71.     As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands relief in her favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and her counsel as Class Counsel;

B.     Awarding Plaintiff and the Class compensatory and/or recissory damages sustained as a result of Defendants' wrongdoing, including, but not limited to, pre-judgment and post-judgment interest;

C.     Awarding Plaintiff and the Class the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

22

D.    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity, and the federal statutory provisions sued hereunder; and

E.    Granting such other and further relief as this Court may deem just and proper.

Dated:  June 21, 2018

Respectfully submitted,

/s/ Jason M. Leviton
Jason M. Leviton (BBO# 678331)
**BLOCK & LEVITON LLP**
155 Federal Street, Suite 400
Boston, MA 02110
Phone: (617) 398-5600
jason@blockesq.com

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
350 Fifth Avenue, Suite 4405
New York, NY 10118
Telephone: (212) 971-1341
Fax: (212) 202-7880

**ADEMI & O'REILLY, LLP**
Guri Ademi
Shpetim Ademi
3620 East Layton Ave.
Cudahy, WI 53110
Telephone: (414) 482-8000
Fax: (414) 482-8001

*Attorneys for Plaintiff*