UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEANETTE A. CARR, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> ANALOGIC CORPORATION et al., <br><br> Defendants. | Civil Action Nos. 18-cv-11301-ADB <br> 18-cv-11557-ADB |

# MEMORANDUM AND ORDER ON MOTIONS TO CONSOILDATE, TO APPOINT LEAD PLAINTIFF, AND TO APPROVE SELECTION OF LEAD COUNSEL

BURROUGHS, D.J.

Jeanette A. Carr, Arthur J. Rosenthal, Rosa Family Trust (collectively, the "Group"), and Louis Buttny, putative class members, have filed competing motions to be appointed lead plaintiff and for approval of their selection of lead counsel in this class action lawsuit filed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). [ECF Nos. 19, 22]. Mr. Buttny and the Group have also both moved to consolidate the following action with the instant case: Russ Burcaw v. Analogic Corporation et al., No. 18-cv-11557-ADB (D. Mass. July 24, 2018). For the reasons stated herein, these actions shall be consolidated; Mr. Buttny's motion to be appointed lead plaintiff and for approval of his selection of lead counsel is GRANTED; and the Group's competing motion to be appointed lead plaintiff and for approval of its selection of lead counsel is DENIED. In light of this order and the consolidation of the related actions, the identical motions filed by Mr. Buttny and the Group in the Burcaw action [ECF Nos. 21, 24] are DENIED as moot.

A.      **Consolidation**

"Where more than one action 'on behalf of a class asserting substantially the same claim or claims arising under' the PSLRA has been filed, and any party has moved to consolidate those actions, the motion to consolidate must be decided prior to appointment of a lead plaintiff." Mulligan v. Impax Labs., Inc., No. C-13-1037 EMC, 2013 WL 3354420, at *3 (N.D. Cal. July 2, 2013) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(ii)). Under Rule 42(a) of the Federal Rules of Civil Procedure, a court may consolidate two or more actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a). "[T]he trial court has broad discretion in weighing the costs and benefits of consolidation to decide whether that procedure is appropriate." Seguro de Servicio de Salud de Puerto Rico v. McAuto Sys. Grp., Inc., 878 F.2d 5, 8 (1st Cir. 1989) (citing New England Energy Inc. v. Keystone Shipping Co., 855 F.2d 1, 7 (1st Cir. 1988)). "Courts have recognized that class action shareholder suits are particularly well suited to consolidation pursuant to Rule 42(a) because unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved." Miami Police Relief & Pension Fund v. Fusion-io, Inc., No. 13-CV-05368-LHK, 2014 WL 2604991, at *3 (N.D. Cal. June 10, 2014).

Here, both actions concern the same claims brought under the same sections of the Securities and Exchange Act of 1934, and are based on substantially identical allegations regarding the purportedly inadequate and misleading proxy statement filed in connection with the merger between Analogic Corporation ("Analogic") and Altaris Capital Partners, LLC (the "Merger"). Accordingly, these two actions involve common questions of law or fact and will be consolidated.

## B. Appointment of Lead Plaintiff and Approval of Selection of Lead Counsel

Under the PSLRA, the Court must "appoint as lead plaintiff the member . . . of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). This person is known as the "most adequate plaintiff." Id. A rebuttable presumption exists that the "most adequate plaintiff" is the movant who "has the largest financial interest in the relief sought by the class," while also satisfying the requirements of Federal Rule of Civil Procedure 23. Id. at § 78u-4(a)(3)(B)(iii). One may only rebut this presumption with "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or is subject to unique defenses. Id. at § 78u-4(a)(3)(B)(iii)(II). The statute's language suggests that "the threshold determination of whether the movant with the largest financial losses satisfies the typicality and adequacy requirements should be a product of the court's independent judgment, and that arguments by members of the purported plaintiff class as to why it does not should be considered *only* in the context of assessing whether the presumption has been rebutted." In re Cendant Corp. Litig., 264 F.3d 201, 263–64 (3d Cir. 2001); State Univs. Ret. Sys. of Ill. v. Sonus Networks, Inc., No. 06-cv-10040-MLW, 2006 WL 3827441, at *2 (D. Mass. Dec. 27, 2006) (same).

To determine the largest financial interest, courts generally consider factors including "'(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period.'" Ark. Teacher Ret. Sys. v. Insulet Corp., 177 F. Supp. 3d 618, 622 (D. Mass. 2016) (quoting In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). Where, as here, the claims alleged only arise under 15 U.S.C. § 14(a) and § 20(a), courts have focused primarily on determining which movant held the

most shares. For instance, in Zucker v. Zoran Corp., No. C 06-04843 WHA, 2006 WL 3591156, at *1−3 (N.D. Cal. Dec. 11, 2006), which involved allegations that the defendant unlawfully granted backdated stock options to its senior executives, the district court recognized that it is "somewhat unique under the PSLRA" when a complaint "alleges only violations of 15 U.S.C. 14(a) and 20(a)." Id. at *3. When the court asked the parties at oral argument how they would calculate damages to determine the largest financial interest, counsel for one candidate "argued that the most applicable measure of damages would be the difference between the inflated value of the stock because of the backdating and the stock's actual value." Id. Counsel for another candidate "argued that a more appropriate measure would be loss-of-bargain damages as applied in merger proxy cases plus compensation for any adverse consequences of keeping on the board those insiders who were involved in the alleged back dating." Id. The court recognized that "[t]hese are admittedly very different damages measures. Under either of them, however, the potential recovery increases with the number of shares purchased by a plaintiff. Thus, the candidate with the largest potential recovery would be the candidate who had bought the largest number of . . . shares.'" Id. Other courts have followed Zucker's approach when presented with claims only under Section 14(a) and 20(a). See In re Outerwall Inc. Stockholder Litig., No. C16-1275JLR, 2017 WL 881382, at *4 (W.D. Wash. Mar. 6, 2017) ("In cases involving Section 14(a) and 20(a) claims, 'the candidate with the largest potential recovery [is] the candidate who ha[s] bought the largest number of . . . shares.'" (quoting Zucker, 2006 WL 3591156, at *3)); see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig., 258 F.R.D. 260, 269 (S.D.N.Y. 2009) ("The number of shares held is another factor that may be considered in gauging the movants' financial interest in the Section 14(a) claims.").

Both Mr. Buttny and the Group acknowledged in their opening briefs that the candidate with the most shares holds the largest financial interest in this type of action. [ECF No. 23 at 10]; [ECF No. 20 at 7]. Here, on the record date to vote on the Merger, Mr. Buttny held 1,250 shares. [ECF No. 21-3 ¶ 4]. Ms. Carr held 200 shares, Mr. Rosenthal held 500 shares, and the Rosa Family Trust held 100 shares. [ECF No. 23 at 10]. Even assuming that the Group was permitted to pool its members' interests, the Group collectively holds only 800 shares. Accordingly, Mr. Buttny owned the most shares of Analogic on the record date to vote on the Merger and therefore has the largest financial interest.[1]

Mr. Buttny also meets the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. At this stage, he "need only make a *prima facie* showing of typicality and adequacy," Ark. Teacher Ret. Sys., 177 F. Supp. 3d at 622, and the Court's findings on these requirements need only be "preliminary." City of Bristol Pension Fund v. Vertex Pharms., No. 12-cv-11654-FDS, 2012 WL 6681907, at *4 (D. Mass. Dec. 21, 2012) (quoting In re Tronox, Inc. Sec. Litig., 262 F.R.D. 338, 343−44 (S.D.N.Y. 2009)); see Emerson v. Genocea Biosciences, Inc., No. 17-cv-12137-PBS, 2018 WL 839382, at *3 n.2 (D. Mass. Feb. 12, 2018) (party seeking appointment as most adequate plaintiff bears a "relatively low burden of proof"). The "burden in proving typicality requires that the named [plaintiff's] claims arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class." In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 46 (D. Mass. 2001) (quoting In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1532 (D. Mass. 1991)). Mr.

---

[1] The Group changed its position on the appropriate method to calculate the largest financial interest after Mr. Buttny's motion disclosed that he owned more shares than the Group's combined holdings. The Group provides no legal authority to support its revised method for determining the largest financial interest, and does not sufficiently explain its method of calculation or establish the accuracy of the data used. [ECF No. 35 at 6].

5

Buttny's claims are typical because, like the other putative class members, he owned shares of Analogic on the record date of the Merger, and suffered harm as a result of the allegedly false and misleading proxy statement concerning the Merger.

"To meet the adequacy requirement, plaintiffs must demonstrate that they have common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experienced and vigorously able to conduct the litigation." In re Lernout, 138 F. Supp. 2d at 46. Mr. Buttny has selected Robbins Geller Rudman & Dowd LLP as lead counsel. He adequately sets forth the firm's experience litigating complex class actions, including under the PSLRA, and the Group does not dispute that his proposed counsel is adequate. [ECF No. 21-4]. Moreover, Mr. Buttny represents in his brief that his substantial Analogic holdings demonstrate "his incentive to vigorously represent the class's claim." [ECF No. 20 at 8]. He further attests that he "did not acquire the security that is the subject of this litigation at the direction of [his] counsel or in order to participate in this private action or any other litigation under the federal securities laws," and that he "is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary." [ECF No. 21-3 at ¶¶ 2−3]. Mr. Buttny therefore satisfies the requirements of Fed. R. Civ. P. 23 at this stage.

Because Mr. Buttny holds the largest financial interest and satisfies the requirements of Rule 23, Mr. Buttny "must be appointed lead plaintiff," unless the Group rebuts the presumption that he is the most adequate plaintiff. Sonus Networks, Inc., 2006 WL 3827441, at *3. "At this point in the analysis, 'the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair[ ] and adequate[ ] job.'" Id. (quoting In re Cendant Corp., 264 F.3d at 268).

Here, the Group asserts that because Mr. Buttny has not provided evidence, and did not certify, that he maintained possession of his shares through the vote and consummation of the Merger, he lacks standing to litigate this action and cannot meet the typicality or adequacy requirements of Rule 23. [ECF No. 35 at 7−8]. Although the Group concedes that Mr. Buttny made a timely motion to be lead plaintiff, it also contends that without such proof of his share ownership, the original certification accompanying his motion was deficient.

Each of the Group's arguments, however, is premised on the Group's unsupported contention that, to represent the class, Mr. Buttny must establish that he owned Analogic shares not only on the record date to vote on the Merger but also through the completion of the Merger. In its opening brief, the Group stated that each of its members owned Analogic stock "prior to the consummation of the merger" without any indication as to whether its members continued to hold those shares through the closing of the deal. [ECF No. 23 at 9–10]. Moreover, none of the Group members' certifications provide the information that the Group claims is required of Mr. Buttny. The Group cites no case law or other legal support demonstrating that such evidence is necessary to establish standing, typicality, or adequacy. See Murphy v. JBS S.A., No. 17-cv-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) ("[c]onclusory assertions and mere speculation will not suffice" to rebut presumption of most adequate plaintiff); OFI Risk Arbitrages v. Cooper Tire & Rubber Co., 63 F. Supp. 3d 394, 403 (D. Del. 2014) ("The [competing movant] must produce more than speculation to rebut the presumption . . . . Mere speculation about a unique defense does not meet this standard."). In any event, Mr. Buttny represents in his reply brief that he is a "long-term Analogic shareholder, having purchased stock between 2011 and 2016," and that he "did hold his Analogic stock through consummation of the [Merger]." [ECF No. 41 at 5]. In the absence of any proof contradicting Mr. Buttny's

7

representations, and any basis in law for challenging his standing or satisfaction of Rule 23, the Group fails to rebut the presumption that Mr. Buttny is the most adequate plaintiff or show that he lacks standing, typicality, or adequacy.

Finally, the Group suggests in the alternative that the court should appoint the Group and Mr. Buttny co-lead plaintiffs and that such an appointment may be in the best interests of the class, given the absence of any institutional investors. [ECF No. 35 at 9]. See Randall v. Fifth St. Fin. Corp., No. 15-cv-7759(LANK), 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016) (noting the "Congressional preference for institutional lead plaintiffs in private securities class actions"). "Indeed, courts routinely adopt a co-lead plaintiff structure where it 'best serve[s]' the interests of the proposed class given 'the circumstances of th[e] particular case.'" In re Millennial Media, Inc. Sec. Litig., 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015) (quoting In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 45 (S.D.N.Y. 1998)).

Although "[m]any courts have recognized the benefits of having both private and institutional lead plaintiffs in securities class actions," appointing the Group and Mr. Buttny here would not align an institutional investor with an individual shareholder. Ark. Teacher Ret. Sys., 177 F. Supp. 3d at 625. This is also not a case in which the parties jointly moved to be named co-lead plaintiffs. Cf. Howard Gunty Profit Sharing Plan v. CareMatrix Corp., 354 F. Supp. 2d 18, 20 (D. Mass. 2000) (granting joint motion to appoint co-lead plaintiffs after "the plaintiffs groups had resolved their differences, chosen four individuals as lead plaintiffs, and proposed two law firms as co-lead counsel"). Rather, this case more resembles Outerwall, 2017 WL 881382, at *9, where the district court was presented with a similar request in the alternative to appoint the competing movants as co-lead plaintiffs, because (1) there were only two candidates; (2) neither candidate was an institutional investor; and (3) one candidate owned only slightly more shares

than the other. The court rejected the proposal in the absence of any showing that a co-lead plaintiff structure was necessary. Id. at *10; see also Tanne v. Autobytel, Inc., 226 F.R.D. 659, 673 (C.D. Cal. 2005) (moving party "has not shown that the appointment of co-lead plaintiffs is preferable to the appointment of a single lead plaintiff in this case. Rather, the court concludes, a co-lead plaintiff structure is unnecessary, and might harm the class by dividing responsibility for the supervision of class counsel"); Hodges v. Immersion Corp., No. C-09-4073 MMC, 2009 WL 5125917, at *4 n.5 (N.D. Cal. Dec. 21, 2009) ("Assuming, *arguendo,* there may exist situations in which a district court should appoint two persons, who have no preexisting relationship, as co-lead plaintiffs, the Court finds no sufficient grounds exist herein to warrant such an appointment.").

Although appointing co-lead plaintiffs may be beneficial in some circumstances, see generally Dolan v. Axis Capital Holdings Ltd., No. 04 Civ. 8564 (RJH), 2005 WL 883008, at *5 (S.D.N.Y. Apr. 13, 2005), the Group has not shown that such an arrangement between Mr. Buttny and the Group would provide any benefits to the class, particularly where the Group already consists of two individuals and a trust, none of whom appear to have any pre-existing relationship. Further, Mr. Buttny plainly objects to the appointment of co-lead plaintiffs. As a practical matter, because the Group has selected Monteverde & Associates PC and Kahn Swick & Foti, LLC as co-lead counsel, as well as Block & Leviton LLP as liaison counsel, the proposed arrangement would culminate in four lead plaintiffs represented by at least four law firms. Cf. Ark. Teacher Ret. Sys., 177 F. Supp. 3d at 625–26 (declining to appoint co-lead plaintiffs given the practical impact of "four parties, represented by three firms" on "the prospects for the efficient litigation of [the] case"); Howard Gunty, 354 F. Supp. 2d at 24 (declining to appoint four co-lead plaintiffs represented by two law firms where "nothing suggest[ed] that they are a

9

cohesive enough unit to adequately represent other plaintiffs"). Considering the lack of a pre-existing relationship among the Group's members (or any other evidence of their cohesiveness), Mr. Buttny's objections, and the complications inherent in coordinating the representation of three individuals and one trust across at least four law firms, the Group's proposal "would have only marginal benefits" for the class, if any, "while potentially complicating the coordination of this litigation." See Arkansas Teacher Ret. Sys., 177 F. Supp. 3d at 626. Given that there is no reason to believe that the Group and Mr. Buttny would "be able to operate in concert and manage the litigation and the lawyers," CareMatrix, 354 F. Supp. 2d at 24, and in the absence of any clear benefit to the class, the Group will not be named as co-lead plaintiff. Because Mr. Buttny has the largest financial interest and satisfies the relevant requirements under Rule 23, and the Group has failed to rebut the presumption that he is the most adequate plaintiff, Mr. Buttny is named lead plaintiff and his selection of lead counsel is approved.

### III. CONCLUSION

For the foregoing reasons, this case and the related action, Russ Burcaw v. Analogic Corporation et al., No. 18-cv-11557-ADB (D. Mass. July 24, 2018), are hereby consolidated. Mr. Buttny's motion to be appointed lead plaintiff and for approval of his selection of counsel [ECF No. 19] is GRANTED, and the Group's competing motion [ECF No. 20] is DENIED. In light of this order and the consolidation of the related actions, the motions pending in the Burcaw case [ECF Nos. 21, 24] are DENIED as moot.

**SO ORDERED.**

October 10, 2018  /s/ Allison D. Burroughs  
ALLISON D. BURROUGHS  
U.S. DISTRICT JUDGE